JOSEPH J. MADDEN *v.* THE STOCKMANS BANK OF HARMAN

(No. 9046)

Submitted September 4, 1940. Decided October 8, 1940.

*LeRoy See,* for plaintiff in error.
*E. L. Maxwell,* for defendant in error.

KENNA, JUDGE:

This notice of motion proceeding was brought in the Circuit Court of Randolph County by Joseph J. Madden against the Stockmans Bank of Harman for the purpose of recovering the amount of an account claimed to be due Madden for legal services rendered the defendant, the

aggregate of which amounted to ten hundred seventy-two dollars and twenty cents. The defendant filed a counter affidavit, and upon submission a verdict for one hundred dollars in favor of the plaintiff was returned. The court refused to set it aside, entered judgment and the plaintiff below was granted this writ.

The controversy seems to turn upon the question of whether the services for which compensation was sought were covered by a general contract of employment entered into between the plaintiff and the defendant on or about January 5, 1935, or whether those services were the outgrowth of a special contract having to do with the proper presentation of the bank's undenied claim against the estates of C. S. Armentrout and Phoebe E. Armentrout. There being no dispute as to the accuracy of the figures, they will be dealt with in round numbers.

The Stockmans Bank first came in contact with Madden in January, 1935. A proceeding was pending to settle the estate of C. S. Armentrout brought by C. L. Armentrout, executor, the personal property having proved insufficient to discharge the estate's indebtedness. At that time, the bank held unsecured notes of C. S. Armentrout, four in number, aggregating fourteen thousand dollars. The then widow of the decedent, Phoebe Armentrout, was a joint maker on eight thousand dollars of this paper. There is no controversy over the substance of the agreement entered into between Madden and the bank covering his general employment. The Armentrout claim was not mentioned and a verbal agreement was entered into, under the terms of which Madden was to receive a nominal annual retainer of fifteen dollars which was to cover nothing more than incidental advice, and was not to be considered as covering appearances for and on behalf of the bank, nor accounts received for collection. The position of the plaintiff below is that at the time he received the Armentrout paper, he took it for collection under this general contract of employment, and that that contract constitutes the only express contract of employment ever entered into between him and Stockmans Bank, and that

for that reason he is entitled to be paid the set percentage then in effect as compensation to members of the Randolph County bar for collection of debt.

The position of the defendant, Stockmans Bank, rests, not upon a denial of its general contract of employment or of its terms, but upon the contention that the Armentrout collection rested upon an agreement later entered into which singled that indebtedness out, and employed Madden under a special agreement rendering the general contract of employment inapplicable. Upon the occasion when Madden's appearance for the bank in the Armentrout proceeding was discussed, Arthur Cooper, cashier of the bank, Gordon Bennett, the bank's president, and Blaine Snyder, its principal stockholder and one of its directors, were present, as were also Madden and his secretary. The testimony was taken in February, 1939, and related to a verbal agreement entered into early in 1936. Mr. Madden and his secretary both stated that the Armentrout notes were left with Madden for collection. The three named representatives of the bank state with equal emphasis that they were not, two of them distinctly stating that Madden was told that the bank regarded the Armentrout indebtedness as "perfectly good" and wished not to incur any expense connected with its presentation, and were assured that there would be no charge connected with the matter that would not be discharged by the Armentrout estate.

A little later, notice of motion proceedings were brought against C. L. Armentrout, Executor, and the decedent's widow, Phoebe Armentrout. Neither was defended. Phoebe Armentrout died before a judgment was rendered in the proceeding brought against her, and an order was entered reviving it against her personal representative.

Virginian Joint Stock Land Bank having set up in the proceeding to settle the Armentrout estate a prior lien of five thousand dollars, the indebtedness that it represented was taken over by the Stockmans Bank for the stated purpose of preventing a forced sale of the realty. Madden was appointed one of three special commissioners to dis-

pose of the Armentrout land. This was done at private sales and the commissioners·were allowed fees, Madden's part of which was one hundred seventy-nine dollars. He had been paid twenty-five dollars by the bank for reducing its claim against Phoebe Armentrout to judgment, so that, including the one-hundred-dollar judgment entered in this proceeding, the aggregate compensation received by Madden in the Armentrout matter is three hundred and four dollars. The question of whether the compensation should cover simply the routine compliance with formal requirements in the presentation of an uncontested claim under a separate understanding, or the standard fees for collection set by the Randolph County Bar Association, augmented by a further charge of two hundred dollars for the appearance before the special commissioner has been presented to the trial judge and jury. We find no apparent reason for disturbing their finding. At the instance of plaintiff, the jury was instructed that if the proof did not establish an express contract, they could still find for the plaintiff, basing the verdict upon the reasonable worth of the services rendered.

The judgment of the Circuit Court of Randolph County is therefore affirmed.

*Affirmed.*